KUHN, J.
12Taxpayer-appellant, TIN, Inc. (TIN), appeals the trial court’s judgment, which sustained peremptory exceptions of prescription and peremption, among other things, filed by the tax collector-defendants, Washington Parish and Sheriff Robert J. “Bobby” Crowe in his official capacity as the Ex-Officio Tax Sales and Use Collector for all taxing authorities located in Washington Parish (collectively the tax collector) and dismissed the taxpayer’s claims for refunds for alleged overpay-ments of sales and use taxes between January 1, 2001 and December 31, 2007. For the reasons that follow, we affirm the dismissal of the taxpayer’s petition.
FACTUAL AND PROCEDURAL BACKGROUND
On May 27, 2009, TIN filed this lawsuit, captioned “PETITION FOR REVIEW OF REFUND CLAIM DENIAL,” averring that as owner of a paper mill in Washington Parish, whose principal business activities include the production and sale of unbleached kraft paper, it had paid taxes to Washington Parish that were not due. Claiming that it was entitled to an exemption for its purchases of the chemicals sodium hydroxide (caustic soda) and sodium hydrosulfide (NaSH) utilized in its manufacturing process, TIN alleged that on multiple occasions it had requested refunds from the tax collector for taxes paid between January 1, 2001 and December 31, 2007. After the tax collector “formally notified” TIN that it was disallowing TIN’s most recent request for a refund, TIN filed this lawsuit seeking to recover the refunds.
The tax collector generally denied the allegations of TIN’s petition and filed several exceptions, including a peremptory exception of no cause of action. Subsequent to a grant of leave by the trial court, TIN amended its petition to ^particularly describe how caustic soda and NaSH were recognizable and identifiable components purchased for the purpose of reprocessing into TIN’s end product and, as such, qualified for the exclusion to local sales tax collection as “materials for further processing into articles of tangible personal property for sale at retail.” See La. R.S. 47:301(10)(c)(i)(aa) and La. R.S. 47:337.6(B).
After answering the amended petition with a general denial, the tax collector filed peremptory exceptions raising objections of no right of action, no cause of action, prescription, and peremption, as well as a plea of estoppel. The trial court sustained the exceptions based on prescription and peremption as to three claims; applied the plea of estoppel as to one claim; and sustained the exception based on no cause of action as to two of the claims it had also concluded were prescribed and perempted. On March 24, 2011, the trial court signed a judgment, which effectively dismissed all of TIN’s claims, and TIN appealed.
DISCUSSION
The Louisiana legislature enacted the Uniform Local Sales Tax Code (ULSTC), effective July 1, 2003. See La. R.S. 47:337.1 and 2003 La. Acts, No. 73, § 1. Although TIN has claimed entitlement to a refund for the time period between January 1, 2001 and June 30, 2003, which predates the ULSTC’s effective date, the parties do not dispute that those claims are regulated by the administrative provisions of Chapter 18, Subtitle II, of Title 47, which addresses revenue and taxation. See La. R.S. 47:337.2(D). On appeal, TIN challenges the trial court’s conclusions, dismissing all its claims for refunds.
“[L]aws regulating the collection of taxes are sui generis and comprise a *1108 system to which general provisions of the law have little, if any, relevance.” Mallard Bay Drilling, Inc. v. Kennedy, 2004-1089 (La.6/29/05), 914 So.2d 533, 549. The time periods set forth in the ULSTC are peremptive; once elapsed, the rights of the taxpayer set out in the statutory scheme are extinguished. See West Baton Rouge Parish Revenue Dep’t. v. Louisiana Machinery Rentals, LLC, 2011-0711 (La.App. 1st Cir.3/9/12), 91 So.3d 1032, 1040 (relying on La. C.C. art. 3458; Reeder v. North, 97-0239 (La.10/21/97), 701 So.2d 1291,1298).
An objection of peremption is a peremptory exception. See La. C.C.P. art. 927(A)(2). Peremption is prescription that is not subject to interruption or suspension. Rando v. Anco Insulations Inc., 2008-1163 (La.5/22/09), 16 So.3d 1065, 1082; see also La. C.C. art. 3461 (providing that peremption may not be renounced, interrupted, or suspended).
Claims under the Administrative Provisions of Chapter 18:
The attachments to TIN’S petitions reveal that on December 13, 2004, a letter was sent to the tax collector from DuC-harme, McMillian and Associates, Inc. (DMA), advising that it had been retained by the taxpayer to review its sales and use tax payments to Washington Parish. DMA asserted that the taxpayer had incorrectly overpaid use taxes between January 1, 2001 through November 30, 2003, on caustic soda and NaSH, which, DMA asserted, qualified for “the raw material exclusion” and for which a refund in the amount of $504,715.21 was requested.[1]
TIN first asserts that the trial court incorrectly concluded that its claim for a refund for the time period between January 1, 2001 and June 30, 2003 was 1 ¿prescribed and perempted. The taxpayer maintains that under La. R.S. 47:1625, the tax collector was required to notify TIN by registered mail that the claim for a refund had been denied, and because the tax collector did not respond to the December 13, 2004 request, the claim is timely. We disagree.
La. R.S. 47:1625 provides in relevant part,
If the collector fails to act on a properly filed claim for refund or credit within one year from the date received by him or if the collector denies the claim in whole or in part, the taxpayer claiming such refund or credit may appeal to the board of tax appeals for a hearing on the claim filed. No appeal may be filed before the expiration of one year from the date of filing such claim unless the collector renders a decision thereon within that time, nor after the expiration of sixty days from the date of mailing by registered mail by the collector to the taxpayer of a notice of the disallowance of the part of the claim to which such appeal relates.
See also and compare La. R.S. 47:337.81(A) of the ULSTC.
It is undisputed that the tax collector did not send any communication advising the taxpayer that it had denied its claim for a refund and that the taxpayer did not appeal or otherwise request a hearing on *1109 the claims for refunds for taxes paid between January 1, 2001 and June 30, 2003 as required under the statute. Thus, under the plain language of La. R.S. 47:1624, its provisions are inapplicable, and having failed to request a hearing on the denial of the claim by the tax collector’s inaction, TIN’s reliance on the statute is misplaced.[2]
La. R.S. 47:1621(F), which authorizes overpayments, states in pertinent part,
This Section shall not be construed to authorize any refund of tax overpaid through a mistake of law arising from the | ^misinterpretation by the secretary of the provisions of any law or of the rules and regulations promulgated thereunder. In the event a taxpayer believes that the secretary has misinterpreted the law or promulgated rules and regulations contrary therewith, his remedy is by payment under protest and suit to recover, or by appeal to the board of tax appeals in instances where such appeals lie.
(Emphasis added.)
See also and compare La. R.S. 47:337.77(F) of the ULSTC.
This section provides that the taxpayer’s remedy is either “by payment under protest and suit to recover” or “by appeal” in those instances where such appeals lie. Clearly, the latter remedy, which appears to reference the provisions of La. R.S. 47:1625, is inapplicable because, among other things, the tax collector did not send a communication of a denial of the request for refunds, and the taxpayer did not appeal for a hearing. Thus, the only other available remedy to TIN was “by payment under protest and suit to recover,” ie., under the provisions of La. R.S. 47:1576.
La. R.S. 47:1576(A)(l)(a) requires that the taxpayer protesting the payment of any amount found due, or the enforcement of any provision of the tax laws in relation thereto, shall remit the amount due and at that time shall give notice of intention to file suit for the recovery of such tax. And La. R.S. 47:1576(A)(2) requires that upon receipt of the taxpayer’s notice of its intention to file suit to recover the tax, the amount remitted shall be placed in an escrow account and held for a period of thirty days, during which time if suit is filed, the funds in the escrow account shall be further held pending the outcome of the suit. See and compare La. R.S. 47:337.63 of the ULSTC.
Because TIN seeks a refund for an alleged overpayment, the taxpayer did, indeed, remit the amount due. But nothing in the record establishes that on the 17dates that TIN remitted the amount due, it gave notice of its intention to file a suit for recovery of the taxes paid.
La. R.S. 47:1623(A) addresses the prescriptive period for refunds, setting forth in pertinent part,
After three years from the 31st day of December of the year in which the tax became due or after one year from the date the tax was paid, whichever is the later, no refund or credit for an overpayment shall be made unless a claim for credit or refund has been filed with the secretary by the taxpayer claiming such *1110 credit or refund before the expiration of said three-year or one-year period.
See and compare La. R.S. 47:337.79(A) of the ULSTC.
The taxes for which DMA requested a refund for the taxpayer in the December 13, 2004 letter were for the time period between January 1, 2001 and June 30, 2003. The record fails to establish the exact date that TIN remitted its tax payments during this time period, but TIN’s suit seeking a refund of the alleged overpayment of taxes during that time period was not filed until May 2009. Thus, under an application of the three-year period set forth in La. R.S. 47:1623 insofar as the 2001 payment of taxes, the refund request was untimely since TIN did not file a suit in accordance with La. R.S. 47:1576 by December 31, 2004; insofar as the 2002 taxes, the refund request was untimely when TIN failed to file a payment-under-protest suit by December 31, 2005; and the refund for the request of the alleged overpayment of taxes for the time period between January 1 and June 30, 2003 was untimely when TIN failed to file suit by December 31, 2006. Accordingly, the trial court correctly determined that TIN’s claims for a refund based on DMA’s request on behalf of the taxpayer in a letter to the tax collector | «dated December 13, 2004, were prescribed and perempted under the administrative provisions of Chapter 18.
Claims under the ULSTC:
Similarly, under a direct application of the provisions of the ULSTC, the claims for refund resulting from the time period between July 1, 2003 and November 30, 2003, as well as those set forth in a subsequent letter dated December 28, 2006, sent to the tax collector by DMA on behalf of TIN, are prescribed and per-empted. The December 28, 2006 letter requested a refund for taxes paid during the time period from December 1, 2003 through December 31, 2004. In response to the December 28, 2006 letter requesting the refund, as with the claims of the December 13, 2004 letter, the tax collector did not act, ie., he neither sent a refund nor notified the taxpayer of a denial.
At the time that the requests for refunds were made, La. R.S. 47:337.81(A) stated in pertinent part,
If the collector fails to act on a properly filed claim for refund or credit within one year from the date received by him or if the collector denies the claim in whole or in part, the taxpayer claiming such refund or credit may within thirty days of the notice of disallowance of the claim request a hearing with the collector for redetermination. The collector shall render a decision within thirty days of the request by the taxpayer. The taxpayer may appeal to a court of competent jurisdiction. No appeal may be filed before the expiration of one year from the date of filing such claim unless the collector renders a decision thereon within that time, nor after the expiration of ninety days from the date of mailing by certified or registered mail by the collector to the taxpayer of a notice of the disallowance of the part of the claim to which such appeal relates.
Because the tax collector did not send a notice of disallowance, we conclude that these provisions, permitting a taxpayer to request a hearing with the tax collector for a redetermination, are inapplicable. The requests for refunds were Rdated December 13, 2004 and December 28, 2006. Thus, under the plain language of the statute, an appeal of a statutory denial of all these claims by the tax collector (due to his failure to act on it) would have had to have been filed by December 13, 2005 and December 28, 2007, respectively. Even if we were to construe the present lawsuit as *1111 an appeal to “a court of competent jurisdiction,” it is untimely on its face under the provisions of La. R.S. 47:337.81, since it was not filed until May 27, 2009.
Moreover, piercing the title of TIN’s pleadings to determine the true nature of the taxpayer’s claims, it is evident that they are based on the belief that the tax collector has misinterpreted the law insofar as TIN’s entitlement to claim an exclusion to its payment of taxes. La. R.S. 47:337.77 addresses the authority for refunds of overpayments, providing in part,
B. The collector shall make a refund of each overpayment where it is determined that:
(1) The tax was overpaid because of an error on the part of the taxpayer in mathematical computation on the face of the return or on any of the supporting documents.
(2) The tax was overpaid because of a construction of the law on the part of the taxpayer contrary to the collector’s construction of the law at the time of payment.
(3) The overpayment was the result of an error, omission, or a mistake of fact of consequence to the determination of the tax liability, whether on the part of the taxpayer or the collector.
(4) The overpayment resulted from a change made by the collector in an assessment, notice, or billing issued under the provisions of this Chapter.
(5) The overpayment resulted from a subsequent determination that the taxpayer was entitled to pay a tax at a reduced tax rate.
(6) The overpayment was the result of a payment that exceeded either the amount shown on the face of the return or voucher, or 11(1 which would have been shown on the face of the return or voucher if a return or voucher were required....
F. This Section shall not be construed to authorize any refund of tax overpaid through a mistake of law arising from the misinterpretation by the collector of the provisions of any law or of any rules and regulations. In the event a taxpayer believes that the collector has misinterpreted the law or rules and regulations contrary therewith, his remedy is by payment under protest and suit to recover. (Emphasis added.)
Reading the provisions of La. R.S. 47:337.77 in pari materia with the other provisions of the ULSTC, we are convinced that the appeal under La. R.S. 47:337.81 is solely for those bases articulated in La. R.S. 47:337.77(B). Thus, when a taxpayer seeks to challenge the tax collector’s interpretation of a law — as TIN does with its claim that the tax collector has incorrectly interpreted the exclusion of the payment of tax for “materials for further processing into articles of tangible personal property for sale at retail” — under La. R.S. 47:337.77(F), its remedy is by payment under protest and suit to recover, i.e., under the provisions of La.R.S. 47:337.63.
On December 28, 2006, La. R.S. 47:337.63 provided in part,
A. (l)(a) Any taxpayer protesting the payment of any amount found due by the collector or the enforcement of any provision of law in relation thereto shall remit to the collector the amount due and at that time shall give notice of intention to file suit for the recovery of such tax....
(2) Upon receipt of this notice, the amount remitted to the collector or the amount of protested taxes that have been paid to the selling dealer shall be placed in an escrow account and held by the collector or his duly authorized rep *1112 resentative for a period of thirty days. If suit is filed for recovery of the tax within the thirty-day period, the funds in the escrow account shall be further held pending the outcome of the suit.
InThus, like its counterpart, ie., La. R.S. 47:1576 made applicable through La. R.S. 47:337.2(D) to claims asserted before July 1, 2003, La. R.S. 47:337.63(A)(l)(a) mandates that the taxpayer protesting the payment of any amount found due, or the enforcement of any provision of the tax laws in relation thereto, to remit to the tax collector the amount due and “at that time shall give notice of intention to file suit for the recovery of such tax.” (Emphasis added.) Likewise, under La. R.S. 47:337.63(A)(2), upon receipt of the taxpayer’s notice of its intention to file suit to recover the tax, the tax collector is mandated to place the amount remitted in an escrow account for a period of thirty days, during which time if suit is filed, the funds in the escrow account “shall be further held pending the outcome of the suit.”
Thus, similar to the claims for refunds for the periods preceding the enactment of the ULSTC, TIN has remitted the amount found due by the tax collector for the time periods between July 1, 2003 and December 31, 2004. But the record contains no evidence to establish that TIN gave notice to the tax collector of its intention to file a suit for recovery of the taxes paid at the time it remitted the amount due as required under La. R.S. 47:337.63(A)(l)(a).
La. R.S. 47:337.79(A) provides the applicable prescriptive period for refunds, stating in great similarity to its counterpart in the administrative provisions of Chapter 18 that,
After three years from the thirty-first day of December of the year in which the tax became due or after one year from the date the tax was paid, whichever is the later, no refund or credit for an overpayment shall be made unless a claim for credit or refund has been received by the collector from the taxpayer claiming such credit or refund before the expiration of said three-year or one-year period.
112Mindful that the record fails to establish the exact date TIN remitted the payments of taxes due, under an application of these provisions to the claims set forth for the time periods between July 1, 2003 and December 31, 2004, TIN was required to file a suit under the provisions of La. R.S. 47:337.63 no later than December 31, 2007. Having failed to give the tax collector the requisite notice at the time it remitted payment, as required under La. R.S. 47:337.63(A)(l)(a) when a payment-under-protest suit is filed, TIN’s claims for refunds for these time periods are prescribed and perempted. Thus, the trial court correctly sustained the exceptions of prescription and peremption for the claims for refunds set out in both the December 13, 2004 and December 28, 2006 letters.
On October 24, 2008, in a letter sent by DMA, TIN again requested refunds for alleged overpayment of taxes, this time for the periods between January 1, 2005 and December 31, 2007, in the amount of $822,081.46. In a letter, dated February 9, 2009, the tax collector “denied in its entirety” these refund requests. TIN then filed this lawsuit on May 27, 2009.
Like the requests for refunds for the preceding years, we conclude the trial court correctly dismissed TIN’s claims as prescribed and perempted. Although the October 24, 2008 letter does not articulate a basis for the claim, DMA stated that “TIN incorrectly paid use tax on raw materials,” apparently referencing its earlier claims for refunds.
*1113 Any claims for refunds arising out of a challenge to the tax collector’s interpretation of the law must be, under La. R.S. 47:337.77(F), by a payment under protest and suit to recover, i.e., in accordance with the provisions of La. R.S. 47:337.63. And under the provisions of La. R.S. 47:337.63(A)(1)(a), TIN was |13required at the time it remitted payment to the tax collector to advise of its intention to file suit for the recovery of those taxes. Nothing in the record establishes that when it remitted taxes for the time period between January 1, 2005 through December 31, 2007, TIN advised the tax collector of its intention to file suit so as to permit the tax collector to place those payments in escrow pending the outcome of the protest suit. Thus, under La. R.S. 47:337.79(A), as of December 31, 2010, TIN’S claims were prescribed and perempted because, piercing through the allegations of its May 27, 2009 petition, TIN simply challenges the tax collector’s interpretation of its entitlement to claim the exemption from the payment of taxes for “materials for further processing into articles of tangible personal property for sale at retail” under La. R.S. 47:301(10)(c)(i)(a)(a) and La. R.S. 47:337.6(B). Accordingly, the trial court correctly dismissed TIN’S claims for refunds for the time period between January 1, 2005 and December 31, 2007, because the claims were prescribed and perempt-ed.[3]
luDECREE
For these reasons, the trial court’s dismissal of TIN’S petition is affirmed.[4] Appeal costs are assessed against plaintiff-appellant, TIN, Inc.
AFFIRMED.

. Attached to the tax collector's answer was a letter, dated December 16, 2003, requesting a refund of $613,642.97 in use taxes for overpayment "on purchases of sodium-based raw materials including caustic soda used in the papermaking process,” which similarly articulated the production of unbleached kraft paper and the manner in which caustic soda is used in the process as that set forth in the December 13, 2004 letter. On appeal, TIN does not challenge the trial court's dismissal of the claims as requested in the December 16, 2003 letter.

. TIN does not explain how the board of tax appeals has jurisdiction over a claim for a refund of sales and use taxes allegedly overpaid. We note that under the particularized provisions of the ULSTC, see La. R.S. 47:337.81 (discussed infra), the appeal of a denial of a claim in whole or part is to the tax collector for a redetermination. Because we find the statute is inapplicable, the issue over the proper reviewing authority is not before us, but we point out that under La. R.S. 47:337.2(D), the courts are directed to interpret those provisions of local ordinances which are similar to the provisions of Chapter 18 to have the same meaning and application.

. Although the parties agree that a hearing was held, ostensibly in compliance with a timely request for a hearing as permitted under La. R.S. 47:337.81(A), at which the tax collector apparently again denied the request for refund, the record contains neither a copy of the request nor a transcript of the hearing. Nothing in TIN’S petition suggests that the basis of its claim for refund is one of those set forth in La. R.S. 47:337.77(B). As such, its May 27, 2009 petition fails to state a cause of action and the trial court correctly dismissed it on this basis. See La. C.C.P. art. 927; see also Capital City Towing & Recovery, Inc. v. City of Baton Rouge, 97-0098 (La.App. 1st Cir.2/20/98), 709 So.2d 248, 250-51. And because a claim for a refund is perempted after three years from the thirty-first day of the year in which the tax became due, see La. R.S. 47:337.79(A) and West Baton Rouge Parish Revenue Dep’t., 2011-0711, 91 So.3d at 1040, the claims for refunds for taxes paid during the time period between January 1, 2005 and December 31, 2007, requested in the October 24, 2008 letter were perempted as of December 31, 2010. Thus, TIN cannot amend its petition to state of cause of action. See La. C.C.P. art. 934.

. Because we have affirmed the dismissal of TIN's claims for refunds, we pretermit a discussion of the propriety of the trial court’s actions of sustaining the exceptions of no cause of action as to the refunds for the time periods January 1, 2001 through December 28, 2006, as well as its application of the tax collector’s plea of estoppel.