VICTORY, J.*
|,We granted the taxpayer’s writ application to clarify the proper procedure and time period for appeals when the tax collector has failed to act on a refund claim for overpayment of taxes after one year, and to determine whether the taxpayer was required to use the payment under protest procedure in this case in order to obtain a refund. After reviewing the record and the applicable law, we reverse the judgments of the lower courts dismissing the tax refund claims, and remand the case to the district court for further proceedings in accordance with this opinion.
FACTS AND PROCEDURAL HISTORY
On December 16, 2003, Gaylord Container Corporation, through their agent DuC- *199 harme, McMillen & Associates, Inc. (“DMA”), sent a letter to the Washington Parish Sheriffs Office, Sales and Use Tax Department (the “Collector”), requesting a refund of $613,642.97 in use taxes allegedly inadvertently paid from January 1, |22000 through November 30, 2003, on purchases of caustic soda, a sodium-based raw material used in the papermaking process (the “first refund request”).[1] In the letter, DMA explained that caustic soda was a processing chemical used in the production of a product for resale, which is excluded from local and state taxation under the raw materials exclusion.[2] On March 25, 2004, an attorney for the Collector wrote a letter to DMA stating only “[a]t this time, we must respectfully decline your request for the refund of sales taxes outlined in your correspondence.” No reasons for the refund denial were given.
On December 13, 2004, DMA sent the Collector a refund request (the “second refund request”), this time for $504,715.21 in use taxes paid by Gaylord from January 1, 2001 through November 30, 2003, on purchases of two raw materials used in the papermaking process, caustic soda and sodium hydrosulfide (“NASH”). DMA explained how these chemicals were beneficial to the papermaking process and necessary to the final product, thereby qualifying them for the raw material exclusion. [ .¡Although this time period was fully encompassed by the time period in the first refund request, this refund request expanded on the reasoning of the first refund request and included NASH in addition to caustic soda. Further, DMA stated:
The caustic and NASH exemption claimed herein resembles the claims filed with both The Department of Revenue and Washington Parish last year. We are pursuing caustic through the Louisiana Board of Tax Appeals and will do so with NASH if necessary. Our remedy, should the refund is [sic] denied *200 by Washington Parish, is to pursue legal action. This can be a time consuming and costly measure, therefore, DMA would not oppose Washington Parish wait until a ruling-is issued by The State of Louisiana for this very issue.
The Collector did not respond to this refund request.
On December 28, 2006, DMA sent the Collector a refund request (the “third refund request”), this time for $167,400.53 in use taxes paid by Gaylord from December 1, 2003 through December 31, 2004, on raw materials. Purportedly attached was a Power of Attorney and “Schedule of exempt invoices,” listing the raw materials subject to the tax exclusion, but those documents do not appear in the record. The letter explained that “[t]his issue, for prior periods, has been denied by the Louisiana Department of Revenue,” and was “currently pending with the Louisiana Board of Tax Appeals.” The Collector did not respond to this request.
On October 24, 2008, DMA sent the Collector a refund request (the “fourth refund request”), for $822,081.46 in use taxes paid by TIN, Inc. (“TIN”)[3] from January 1, 2005 through December 31, 2007, on raw materials. Attached was a Power of Attorney authorizing DMA to act for TIN for sales and use taxes paid from January 1, 2005 through December 31, 2007, and a “Schedule of exempt invoices.” DMA instructed the Collector that “[t]his issue, for prior periods, has been approved by the Louisiana Department of Revenue.” On February 27, 2009, the Collector |4denied this refund request, stating “we have examined the refund claim and by this means respectfully advise you that the claim must be denied in its entirety.” On March 26, 2009, TIN formally requested a redetermination hearing with the Collector seeking the grounds for its disallowance and to have the disallowance reversed. A hearing was held on May 5, 2009 and the Collector declined to reconsider his denial of the fourth refund request. There is no transcript of this hearing in the record.
On May 27, 2009, TIN filed the instant “Petition for Review of Refund Claim Denial,” claiming entitlement to a refund of the use taxes paid from January 1, 2001 through November 30, 2003, December 1, 2003 through December 31, 2004, and January 1, 2005 through December 31, 2007, which were the subject of the second, third, and fourth refund requests. After the district court granted TIN leave to amend its petition so as to avoid having its claims dismissed, TIN filed a First Amended and Supplemental Petition for Review of Refund Claim Denial on December 16, 2009. In its amended petition, TIN fully specified the grounds under which it sought a refund for overpayment of the use taxes which were subject to the second, third and fourth refund requests. No claim was made relative to the taxes referred to in the first refund request. The Collector filed exceptions of no right of action, no cause of action, prescription and peremption, as well as a plea of estop-pel.
The district court found that the refund claims relative to the second and third refund requests were prescribed and per-empted pursuant to La. R.S. 47:1625 and La. R.S. 47:337.81, which provide the time periods under which the tax payer must take some action after the tax collector has denied his claim. La. R.S. 47:1625 applies to tax periods prior to the enactment of the Uniform Local Sales Tax Code *201 (“ULSTC”) in 2003, which in this case encompassed the time period of the second refund request after July 1, 2003. Prior to the enactment of the ULSTC, La. R.S-. 47:337.1, et seq., |5which sought to promote uniformity in the administration of the sale and use taxes imposed by local taxing jurisdictions, individual ordinances in each parish/municipality governed sales tax collection and refunds. Pursuant to a Washington Parish local ordinance, La. R.S. 47:1625 was adopted and thus applies to the tax periods from January 1, 2001 through July 1, 2003, after which La. R.S. 47:337.81 applied. With respect to over-payments and refunds, La. R.S. 47:337.81 is modeled after and is virtually identical to La. R.S. 47:1625. La. R.S. 47:1625 provides in pertinent part:
If the collector fails to act on a properly filed claim for refund or credit within one year from the date received by him or if the collector denies the claim in whole or in part, the taxpayer claiming such refund or credit may appeal to the board of tax appeals for a hearing on the claim filed. No appeal may be filed before the expiration of one year from the date of filing such claim unless the collector renders a decision thereon within that time, nor after the expiration of sixty days from the date of mailing by registered mail by the collector to the taxpayer of a notice of the disallowance of the part of the claim to which such appeal relates.
Similarly, La. R.S. 47:337.81(A)[4] provides in pertinent part:
If the collector fails to act on a properly filed claim for refund or credit within one year from the date received by him or if the collector denies |fithe claim in whole or in part, the taxpayer claiming such refund or credit may within thirty days of the notice of disallowance of the claim request a hearing with the collector for redetermination. The collector shall render a decision within thirty days of the request by the taxpayer. The taxpayer may appeal to a court of competent jurisdiction. No appeal may be filed before the expiration of one year from the date of filing such claim unless the collector renders a decision thereon within that time, nor after the expiration of ninety days from the date of mailing by certified or registered mail by the collector to the taxpayer of a notice of the disallowance of the part of the claim to which such appeal relates.
The district court found that denial of the first refund request acted as a denial of *202 the second claim and TIN failed to appeal this denial relative to the second refund request. Regarding the third refund request, the district court essentially found that the Collector’s failure to act amounted to a constructive denial of the claim; thus, after one year, TIN only had 30 days to seek reconsideration or 90 days to appeal, and TIN did neither. Relative to the third and fourth refund requests, the district court found that TIN was estopped from seeking a refund and had no cause of action to seek a refund because, after the first refund request was denied, TIN’s only remedy was to pay the taxes under protest.
The court of appeal affirmed. TIN, Inc. v. Washington Parish Sheriffs Office, 12-0156 (La.App. 1 Cir. 7/2/12), 97 So.3d 1105. Regarding TIN’s pre-ULSTC claims, the court of appeal found that La. R.S. 47:1625 did not apply because the Collector failed to respond to TIN’s second refund request. Id. at 1109. Instead, TIN’s only remedy was to pay the taxes under protest under La. R.S. 47:1621(F), which provides:
This Section shall not be construed to authorize any refund of tax overpaid through a mistake of law arising from the misinterpretation by the [collector] of the provisions of any law or of the rules and regulations promulgated thereunder. In the event a taxpayer believes that the [collector] has misinterpreted the law or promulgated rules and regulations contrary therewith, his remedy is by payment under protest and suit to recover, or by appeal to the board of tax appeals in instances where such appeals lie.
|7Because the “instances where such appeals lie” refers to La. R.S. 47:1625, and that statute was inapplicable, the court of appeal found TIN’s only recourse was to pay under protest. Id. The court of appeal then found that TIN did not timely file a payment under protest suit within the time periods provided for in La. R.S. 47:1623(A), which provides in pertinent part:
After three years from the 31st day of December of the year in which the tax became due or after one year from the date the tax was paid, whichever is the later, no refund or credit for an overpayment shall be made unless a claim for credit or refund has been filed with the secretary by the taxpayer claiming such credit or refund before the expiration of said three-year or one-year period.
In the court of appeal’s view, TIN would have had to file a payment under protest suit within three years from the end of the year taxes became due. Id. at 1110.
Similarly, regarding the post-ULSTC claims contained in the second and third refund requests, because the Collector failed to act, the appellate court found the provisions of La. R.S. 47:337.81(A), allowing the taxpayer to seek a redetermination of a collector’s denial, were inapplicable. Id. Thus, the court of appeal reasoned that TIN had one year from the date of filing the second and third refund requests to appeal the “statutory denial” of all these claims. Id. Under the post-ULSTC counterpart to La. R.S. 47:1621(F), La. R.S. 47:337.77(F), the court of appeal found that TIN’s only remedy was to pay the taxes under protest and file suit to recover. Id. at 1111-1112. La. R.S. 47:337.77(F) provides:
This Section shall not be construed to authorize any refund of tax overpaid through a mistake of law arising from the misinterpretation by the collector of the provisions of any law or of any rules and regulations. In the event a taxpayer believes that the collector has misinterpreted the law or rules and regulations contrary therewith, his remedy is *203 by payment under protest and suit to recover.
Again, applying La. R.S. 47:337.79(A),[5] the counterpart to La. R.S. 47:1623(A), the Iscourt of appeal found that TIN failed to timely file a payment under protest suit related to its second and third refund requests to which ULSTC applied. Id. at 1112. As to the claims relating to the fourth refund request, although TIN timely appealed under La. R.S. 47:337.81 after the Collector denied its refund request, this refund request was essentially the same as the early ones and thus, TIN’s only remedy was the payment under protest procedure. Therefore, these claims were prescribed and perempted under La. R.S. 47:337.79(A). Id. at 1113. We granted TIN’s writ application to clarify the proper procedure to be utilized where taxes have been voluntarily paid and the tax collector fails to respond to a taxpayer’s refund request under La. R.S. 47:1625 and 47:337.81, and to determine whether TIN’s only remedy was the payment under protest procedure in this case. TIN, Inc. v. Washington Parish Sheriffs Office, 12-2056 (La.12/14/12), 104 So.3d 426.
DISCUSSION
Article VII, § 1 of the Louisiana Constitution vests the power of taxation in the legislature, and Article VII, § 3(A) mandates the legislature to “provide a complete and adequate remedy for the prompt recovery of an illegal tax paid by a taxpayer.”[6] In St. Martin v. State, 09-0935 (La.12/1/09), 25 So.3d 736, 738, we recognized three remedies the .legislature has provided to fulfill its obligation: “(1) the Claims against the State procedure, La. R.S. 47:1481, et seq.,[7] (2) the Payment under Protest ^procedure, La. R.S. 47:1576, et seq., and (3) the Overpayment Refund procedure, La. R.S. 47:1621, et seq.”[8]
The Overpayment Refund procedure of La. R.S. 47:1621, et seq., “affords a procedure specifically directed toward the re *204 fund of tax overpayments paid voluntarily and without protest.” St. Martin, supra, 25 So.3d at 739. La. R.S. 47:337.77, relative to local governments after the enactment of the ULSTC, contains essentially the same provisions as La. R.S. 47:1621, except that La. R.S. 47:337.77 does not contain the provisions applicable only to state taxes.[9]
Both statutes provide the same definition of “overpayment” as follows:
“overpayment” means a payment of a tax, penalty or interest when none was due; the excess of the amount of tax, penalty or interest paid over the amount due; or the payment of a penalty that is later waived or remitted by the collector, provided that the power of the collector to refund overpayments shall be as prescribed and limited in this Section.
La. R.S. 47:1621(A); La. R.S. 47:337.77(A). Both statutes require the secretary or collector to make a refund of each overpayment when: (1) the taxpayer made an error in the mathematical computation of taxes due; (2) the tax was overpaid because of a construction of law made by the taxpayer contrary to the secretary or collector’s construction of law at the time the payment was made; (3) the overpayment was a result of an error, omission, or a mistake of fact of consequence to the determination |inof the tax liability; (4) the overpayment resulted from a change made by the secretary or collector in an assessment, notice, or billing; (5) the overpayment resulted from a subsequent determination that the taxpayer was entitled to pay a tax at a reduced tax rate; or (6) the overpayment was the result of a payment that exceeded the amount shown on the face of the return or voucher, or which would have been shown if a return or voucher were required. La. R.S. 47:1621(B)(l)-(4), (8) and (9); La. R.S. 47:337.77(B)(l)-(6). In addition to the above circumstances where a refund is required, both statutes contain provisions requiring the secretary or collector to make a refund, “[n]otwithstanding the provisions of Subsection B, where it is determined that there is clear and convincing evidence that an overpayment has been made, ... subject to conditions or limitations provided by law.” La. R.S. 47:1621(0); La. R.S. 47:337.77(0).
However, both statutes prohibit the use of the Overpayment Refund procedure where the taxpayer has overpaid taxes because the collector or secretary has made a mistake of law in assessing taxes or in enforcing tax laws, rules or regulations against the taxpayer. La. R.S. 47:1621(F) provides:
This Section shall not be construed to authorize any refund of tax overpaid through a mistake of law arising from the misinterpretation by the secretary of the provisions of any law or of the rules and regulations promulgated thereunder. In the event a taxpayer believes that the secretary has misinterpreted the law or promulgated rules and regulations contrary therewith, his remedy is by payment under protest and suit to recover, or by appeal to the board of tax appeals in instances where such appeals lie.
Likewise, La. R.S. 47:337.77(F) provides:
This Section shall not be construed to authorize any refund of tax overpaid through a mistake of law arising from the misinterpretation by the collector of the provisions of any law or of any rules and regulations. In the event a taxpay *205 er believes that the collector has misinterpreted the law or rules and regulations contrary therewith, his remedy is by payment under protest and suit to recover.
| nLa. R.S. 47:837.63, which provides the procedure whereby a taxpayer must pay taxes under protest, states:
Any taxpayer protesting the payment of any amount found due by the collector or the enforcement of any provision of law in relation thereto shall remit to the collector the amount due and at that time shall give notice of intention to file suit for the recovery of such tax or shall remit to the collector the amount due and make a written request for mandatory arbitration pursuant to R.S. 47:337.51.1.
La. R.S. 47:337.63(A)(1)(a) (emphasis added).[10]
In this case, TIN did not pay the taxes at issue under protest. Instead, it paid the taxes, based on its own calculation of the amounts due, and later determined that these amounts were not in fact due because the products upon which the taxes were based were excluded from taxation. Thus, the issue is whether, as the lower courts found, TIN was not allowed to pay these taxes unconditionally and then seek a refund, but rather was required to pay these taxes under protest and then file suit pursuant to the Payment under Protest procedure. Here, the lower courts found that in denying the first refund request, the collector essentially found these taxes to be due, and this amounted to an interpretation of the law denying all of TIN’S subsequent refund requests, such that TIN’S only relief was to pay the subsequent taxes under protest and file suit to recover them based on the collector’s misinterpretation of the law. We disagree for several reasons..
First, the initial refund request was for overpayment of use taxes on caustic soda. TIN argued in general terms why caustic soda was excluded from taxes under La. R.S. 47:301(10)(c)(i)(aa) and LAC 61:1.4301. The denial letter from the Collector stated only “[a]t this time, we must respectfully decline your request for the | )2refund of sales taxes outlined in your correspondence.”[11] The second refund request covered only some of the same time covered in the first refund request, was somewhat more specific, and, most importantly, included a new material, NASH. Based on the Collector’s vague general denial of the first refund request, the inclusion of NASH in the second refund request, and the omission of a time period for which a refund was sought, there was no reason for TIN to believe the Collector had made a “mistake of law arising from the misinterpretation ... of the provisions of any law or of the rules and regulations promulgated thereunder” with regard to the taxes paid subject to the second refund request, which is the basis on which a payment under protest must be made. See La. R.S. 47:1621(F); La. R.S. 47:337.77(F). Further, the applicable local tax ordinances require the Collector to examine each claim for refund, and state that “[i]f the collector shall reject the claim for refund in whole or in part he shall make an order accordingly and serve notice upon such taxpayer.” Washington Parish Law Enforcement District General Sales and Use Tax Ordinance, § 10.3. If, *206 upon examination, the Collector thought the use taxes on caustic soda and NASH sought to be refunded in the second refund request were not refundable, he should have denied this refund request as he did the first one, but he did not.
For the same reasons, TIN was not required to pay the taxes subject to the third and fourth refund requests under protest, considering that the Collector did not respond at all to the second and third refund requests. While this Court has held that the payment under protest procedure is the only remedy available for a refund in cases after the tax collector denies a refund request, see Kean’s Partnership v. Parish of East Baton Rouge, 96-0751 (La.11/25/96), 685 So.2d 1043, 1046, and Cat’s Meow, Inc. v. City of New Orleans through Dept. of Finance, 98-0601 (La.10/20/98), 720 So.2d 1186, 1200, we have never gone so far as to hold that a taxpayer must pay under protest when the tax collector fails to act on a refund request. In addition, we have emphasized that while payment under protest is “clearly intended to provide a postdeprivation remedy for the recovery of taxes, nowhere therein does the statute state that it is the sole remedy.” Church Point Wholesale Beverage Co., Inc. v. Tarver, 614 So.2d 697, 706 (La.1993).
Finally, the statute providing the procedure for payment under protest requires that “[a]ny taxpayer protesting the payment of any amount found due by the collector or.the enforcement of any provision of law in relation thereto shall remit to the collector the amount due and at that time shall give notice of intention to file suit ...” La. R.S. 47:337.63(A)(1)(a) (emphasis added). Here, there was no “amount found due by the collector,” nor was there any “enforcement of any law in relation thereto,” to which the taxpayer could protest. TIN simply paid the taxes based on its own calculation and interpretation of the amount due. Therefore, based on the facts presented here, TIN was not required to pay these taxes under protest in order to obtain a refund.
Having found that TIN was not required to pay these taxes under protest in order to seek a refund, the next issue is whether the Collector’s failure to respond to the second and third refund requests acted as a constructive denial of the claims such that after one year had elapsed from the dates of these requests, TIN was required to either appeal within 60 days under La. R.S. 47:1625 or request a rede-termination hearing within 30 days under La. R.S. 47:337.81. As stated previously, for refunds requested in the second refund request prior to July 1, 2003, La. R.S. 47:1625 applies. Relevant to this case, that statute provides that “[i]f the collector fails to act on a properly filed claim for refund or credit within one year from the date received by him \u... the taxpayer claiming such refund or credit may appeal to the board of tax appeals for a hearing on the claim filed.” La. R.S. 47:1625. Further, the statute provides that “[n]o appeal may be filed before the expiration of one year from the date of filing such claim unless the collector renders a decision thereon within that time, nor after expiration of sixty days from the date of mailing by registered mail by the collector to the taxpayer of a notice of the disallowance ...” La. R.S. 47:1625. Thus, under the clear language of the statute, if the collector fails to act on a claim, the taxpayer may appeal to the board of tax appeals for a hearing; however, this may not be done any sooner that the expiration of one year from the date of filing the claim. This statute does not impose a time limit on when this must be done. The 60-day time period applies only after the date of *207 mailing by registered mail of the disallowance, which did not occur here.
Although the wording of La. R.S. 47:1625 is clear, a review of the legislative history also supports our interpretation of this statute. In 1958, the Legislature amended La. R.S. 47:1625 to remove language that specifically required a taxpayer to file an appeal within 60 days after one year had run from the filing of a refund claim and the collector failed to act. La. Acts 1958, No. 433, § 1. Prior to the 1958 amendment of La. R.S. 47:1625, that statute read in pertinent part, “[t]his appeal must be filed with the board of tax appeals within sixty calendar days from the expiration of the year in which the collector has failed to act upon a claim for refund or credit ...” When the Legislature amended and reenacted La. R.S. 47:1625, it removed this requirement. As we have stated, when interpreting a statutory provision, we must presume that the Legislature acts deliberately and “when the Legislature changes the wording of a statute, it is presumed to have intended a change in the law.” Borel v. Young, 07-0419 (La.11/27/07), 989 So.2d 42, 48. Therefore, when the Legislature | ir,removed this requirement, we can only assume that the Legislature intended to change the law such that the 60-day time period no longer applied where the collector has failed to act upon a claim for refund within one year. Thus, contrary to the rulings of the lower courts, there is no requirement in La. R.S. 47:1625 that the taxpayer file an appeal 60 days after the expiration of one year from the date of the filing of a refund claim where the collector has failed to act. And, the court of appeal’s holding that the taxpayer only has one year from the date of submitting the refund claim to appeal is clear legal error, as the statute precludes any such action by the taxpayer during that time period.
We also interpret La. R.S. 47:337.81,[12] applicable to the tax periods after July 1, 2003 in the second refund request and to the tax periods in the third refund request, in the same manner. La. R.S. 47:337.81 is substantially similar to La. R.S. 47:1625, except that it provides for an administrative remedy in the form of a redetermination hearing upon the denial of a refund request, provides a short 30-day time period in which to request the redetermination hearing, and allows 90 days, rather than 60 days, to appeal where a refund request has been denied. La. R.S. 47:337.81(A) provides that “[i]f the collector fails to act on a properly filed claim for refund or claim within one year from the date received by him or if the collector denies the claim in whole or in part, the taxpayer ... may within thirty days of the notice of disallowance of the claim request a hearing with the collector for redetermination.” The tax collector is then required to render a decision within thirty days of the request for hearing. La. R.S. 47:337.81(A). While this provision applies where the collector fails to act, the 30-day time period for requesting a hearing only begins after “notice of disallowance of the claim.” Here, there was no “notice of disallowance of the claim” for the second |1ñand third refund requests. Section (A) of La. R.S. 47:337.81 also allows an appeal to a court of competent jurisdiction. Such appeal cannot be made prior to one year from the time the claim was filed, unless the collector “renders a decision thereon within that time,” and the appeal may not be made “after the expiration of ninety days from the date of *208 mailing by certified or registered mail by the collector to the taxpayer of a notice of the disallowance ...” La. R.S. 47:337.81(A) (emphasis added). Again, the Collector never “render[ed] a decision,” nor mailed a notice of disallowance to the taxpayer; thus, the 90-day appeal period does not apply to TIN.
The Collector argues that this interpretation would lead to absurd results in that refund claims to which the tax collector does not respond never prescribe, and that the fiscal ability of the state and local governments would be highly compromised were taxpayers in TIN’s position allowed to pay taxes without protest and anytime later be able to claim entitlement to a refund. However, these concerns are unfounded. It is within the sole control of the tax collector to begin the running of the time periods for requesting redetermi-nation or appeal. He or she must simply do his or her job and respond to properly filed refund requests. Once he or she denies a refund request, the relatively short periods of La. R.S. 47:1625 and 47:337.81 apply.
Further, there is a prescriptive period for the refund of overpayments of taxes in which the taxpayer must claim entitlement to the refund. La. R.S. 47:337.79 provides a prescriptive period, as follows:
A. After three years from the thirty-first day of December of the year in which the tax became due or after one year from the date the tax was paid, whichever is later, no refund or credit for an overpayment shall be made unless a claim for credit or refund has been received by the collector from the taxpayer claiming such credit or refund before the expiration of said three-year or one-year period. The maximum amount, which shall be refunded or credited, shall be the amount paid within said three-year or one-year period. The collector shall prescribe the manner of filing claims for refund or credit. (Emphasis added).
|17B. Provided that in any case where a taxpayer and the collector have consented in writing to an extension of the period during which an assessment of tax may be made, the period of prescription for refunding or crediting overpay-ments as provided in this Section shall be extended in accordance with the terms of the agreement between the taxpayer and the collector.
La. R.S. 47:1623, applicable to tax periods prior to July 1, 2003, contains substantially the same language.
According to these prescription statutes, a taxpayer only has three years after a tax becomes due or one year after a tax is paid, whichever is later, to file a claim for refund with the tax collector. Contrary to the court of appeal’s holding, there is no requirement in those provisions that the taxpayer file a lawsuit within that time period, only that the taxpayer file a claim for credit or refund with the collector and that the collector receive the claim within that one or three-year period. A “claim for credit or refund” is made where the taxpayer requests a refund of taxes by letter to the tax collector, just as was done here.[13]
With regard to TIN’s fourth refund request, as we have held that TIN was not required to pay those taxes under protest, TIN followed the correct procedure after the Collector denied this request by timely *209 filing a request for redetermination within 30 days. After this request was denied, TIN timely filed this suit in a court of competent jurisdiction.
CONCLUSION
Our state constitution mandates that the legislature “provide a complete and adequate remedy for the prompt recovery of an illegal tax paid by a taxpayer.” La. Const, art. VII, § 3(A). The applicable statutes set out the circumstances under which the tax collector must refund the taxpayer for the overpayment of taxes. See La. R.S. |1S47:1621(A); La. R.S. 47:337.77(A). These statutes limit a taxpayer who thinks the collector has misinterpreted the law relative to his refund claim to the Payment under Protest procedure. See La. R.S. 47:1621(F); La. R.S. 47:337.77(F). Likewise, La. R.S. 47:1576(A) and 47:337.63(A)(l)(a) require payment under protest where the tax collector has found an amount of taxes to be due or has enforced any tax law relative to an amount of taxes found to be due. However, nothing in these provisions requires a taxpayer to pay taxes under protest where the tax collector has not acted on a properly filed refund claim at all. Further, a refund request that has been denied cannot serve as a basis for requiring payment under protest for a subsequent refund request where the subsequent refund request includes different materials and different time periods.
Regarding the time periods for appeals and requests for redetermination under La. R.S. 47:1625 and 47:337.81, these time periods do not apply where the collector has failed to act on a refund request after the expiration of one year. The time limitations in these statutes only apply after the collector has affirmatively denied a refund request. To avoid the possibility that a taxpayer could have an unlimited time in which to claim entitlement to a refund after he has submitted his refund request, the tax collector need simply perform his or her job and affirmatively act on the request. The Collector did not do so in this case; therefore, TIN’S law suit is neither prescribed nor perempted under La. R.S. 47:1625 or 47:337.81.[14]
119DECREE
For the foregoing reasons, the judgments of the lower courts are reversed and the case is remanded to the district court for further proceedings in accordance with this opinion.
REVERSED AND REMANDED.
Judge JEFFERSON D. HUGHES III, assigned as Justice pro tempore, sat for KIMBALL, C.J. for oral argument. After oral argument, he determined that he had a conflict of interest necessitating his recu-sal. Consequently, this decision is being rendered by six Justices.

 Judge Jefferson D. Hughes III, assigned as Justice pm tempore, sat for Kimball, C.J. for oral argument. After oral argument, he determined that he had a conflict of interest necessitating his recusal. Consequently, this decision is being rendered by six Justices.

. As will be seen, later refund requests were sent in the name of TIN, Inc., which is the surviving entity of a merger between Gaylord and TIN, Inc. The defendants claim that DMA was not the authorized agent of Gaylord Container Corporation or TIN, Inc., and thus, all refund requests sent by DMA were invalid. However, attached to this December 16, 2003 refund request was a valid power of attorney authorizing DMA to act on Gaylord’s behalf in this matter for taxes from January 1, 2000 through December 31, 2003. Further, although the Collector now uses this as a defense for not responding to subsequent refund requests by DMA, defendant responded to DMA regarding this request and a subsequent request made on October 24, 2008. The Collector never notified Gaylord that its refund request was being denied because DMA was not Gaylord’s lawful agent. The Collector never notified TIN, Inc., nor DMA, that any of its refund requests were invalidly submitted by DMA. As we recently held in a payment under protest case, J-W Power v. State, through Dept. of Revenue and Taxation, 10-1598 (La.3/15/11), 59 So.3d 1234, 1242, nothing in the tax laws precludes an agent from acting for a taxpayer.

. For purposes of sales tax, La. R.S. 47:301(10)(c)(i)(aa) states that "the term 'sale at retail’ does not include the sale of materials for further processing into articles of tangible personal property for sale at retail.” In arguing that caustic soda was excluded from.taxation under the raw materials exclusion, TIN cited to "Louisiana R.S. 4301,” but quoted the provisions of the Louisiana Administrative Code, Title 61, Part I, § 4301 ("LAC 61:1.4301”), which specifically addresses the further processing exclusion found in La. R.S. 47:301 (10)(c)(i)(aa). This Court has held that raw materials further processed into end products are excluded from this sales and use tax provision if: (1) the raw materials become recognizable and identifiable components of the end products: (2) the raw materials are beneficial to the end products; and (3) the raw materials are material for further processing, and as such, are purchased with the purpose of inclusion in the end products. See International Paper, Inc. v. Bridges, 07-1151 (La.1/16/08), 972 So.2d 1121, 1136.

. As stated in note 1, supra, TIN is the surviving entity of a merger between Gaylord and TIN. After the merger, the refund requests were submitted in the name of TIN, and TIN is the plaintiff in this case seeking the refunds.

. La. R.S. 47:337.81(A) was amended by Acts 2010, No. 1003, § 2 and now allows the taxpayer to request mandatory arbitration where the collector has denied a claim for refund, providing as follows:
A. (1) If the collector fails to act on a properly filed claim for refund or credit within one year from the date received by him or if the collector denies the claim in whole or in part, the taxpayer claiming such refund or credit may within thirty days of the notice of disallowance of the claim request a hearing with the collector for redetermination. The collector shall render a decision within thirty days of the request by the taxpayer.
(2) The taxpayer may appeal a denial of a claim for refund to a court of competent jurisdiction or mail a written request for mandatory arbitration pursuant to R.S. 47:337.51.1. No appeal may be filed or request for arbitration made before the expiration of one year from the date of filing such claim unless the collector renders a decision thereon within that time, nor after the expiration of ninety days from the date of mailing by certified or registered mail by the collector to the taxpayer of a notice of the disallowance of the part of the claim to which such appeal relates.
As the amendment is effective January 1, 2011, it does not apply to this case, but the 2010 amendment did not change the provisions that are material to this case.

. La. R.S. 47:337.79(A) is identical to La. R.S. 47:1623(A), except that the claim for credit or refund must be received by the collector before the expiration of the three or one-year periods.

. In addition, the Taxpayer's Bill of Rights assures taxpayers of the right, among other things, "to receive a refund, in some cases with interest, for any taxes overpaid so long as the refund claim is timely filed in accordance with Article VII, Section 16 of the Constitution of Louisiana and the laws of the state, including R.S. 47:1580, 1621(A), 1623, and 2451.” La. R.S. 47:15(9).

7. La. R.S. 47:1481 provides:
Any person who has a claim against the State of Louisiana for money erroneously paid into the State Treasury, or for any other claim, may present such claim to the board of tax appeals, in such form and together with such proofs as the board of tax appeals may require by its rules and regulations. The board shall duly examine into the justice, merits and correctness of each such claim presented to it, and shall officially pass thereon.
While the Claims against the State procedure is not applicable here, this Court has found that La. R.S. 47:1481 "provides a proper vehicle for the recovery of taxes paid without protest pursuant to an unconstitutional statute.” Church Point Wholesale Beverage Co., Inc. v. Tarver, 614 So.2d 697, 706 (La.1993).

.These remedies meet the requirements of federal constitution as well, as expressed in McKesson Corp. v. Division of Alcoholic Beverages & Tobacco, Dept. of Business Regulation of Florida, 496 U.S. 18, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990) (the state can afford prede-privation relief such that taxpayers have the ability to meaningfully challenge the tax before having to pay it, or can afford post-deprivation relief by providing an opportunity and a "clear and certain remedy” for any erroneous or unlawful tax collection, specifically approving a procedure whereby only taxpayers paying under protest can obtain relief and that such actions would be subject to short statutes of limitations).

. La. R.S. 47:1621 refers to the "secretary,” and La. R.S. 47:337.77 refers to the "collector.”

. The pre-ULSTC version containing the Payment under Protest procedure, La. R.S. 47:1576(A), applicable to local governments prior to 2003, contains essentially the same provisions as La. R.S. 47:337.63(A)(1)(a).

. TIN did not appeal the denial of the first refund request and is not claiming a refund based on this refund request.

. As explained in note 4, we are referring to and applying La. R.S. 47:337.81 before its amendment in 2010.

. While the court of appeal found the lawsuit was prescribed because TIN did not file its lawsuit within the one- and three-year periods stated above and this was clearly incorrect, the issue of the timeliness of TIN’s second and third refund request letters to the Collector under La. R.S. 47:1623 and La. R.S. 47:337.79 is not before us.

. Because of our ruling, we need not address the court of appeal’s statement that "[t]he time periods set forth in the ULSTC are peremptive; ...” TIN, Inc., supra, 97 So.3d at 1108.